```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  THE CENTRAL ORTHOPEDIC GROUP,          :
  LLP,                                   :
                                         :
                          Plaintiff,     :   MEMORANDUM DECISION AND
                                         :   ORDER
              -against-                  :
                                         :   24-cv-7014 (BMC)
                                         :
  AETNA LIFE INSURANCE COMPANY,          :
                                         :
                          Defendant.     :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This is one of eight related cases that plaintiff, a healthcare provider, has brought against defendant Aetna Life Insurance Company or its affiliates. Plaintiff does not participate in Aetna's health care plans, but has rendered services to patients who are Aetna's insureds. Based on the patients' having assigned their rights under the insurance policies to plaintiff, plaintiff contends that Aetna is obligated to pay for the services rendered at Aetna's out-of-network rate. Federal jurisdiction is premised on ERISA, 29 U.S.C. § 1132(a)(1)(B), and the Court's supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).[1]

---

[1] Plaintiff originally brought all of its claims in a single case. But the number of disparate policies at issue, the nature of the claims, and Aetna's different defenses to the claims depending on the policies under which they were asserted made the case unmanageable. The Court therefore directed the parties to confer and reach agreement on how to separate the claims, and for plaintiff to commence separate cases, grouping its claims based on the nature of the policies and the legal issues raised.

The parties did so, and plaintiff refiled nine separate actions (one has since been voluntarily dismissed). But plaintiff did a poor job of conforming the separate complaints to the particular claims at issue. The separate complaints repeated what had become inapplicable allegations from the original consolidated complaint, and none of them set forth the jurisdictional basis for the complaint, in violation of Fed. R. Civ. P. 8(a), even though the jurisdictional predicate differed between cases. Nevertheless, in the course of the motion practice on defendant's motion to dismiss, the Court and the parties have been able to cull those claims from the complaints that are particular to the group of policies that pertain to each action.

Here, although the complaint fails to comply with the requirement in Fed. R. Civ. P. 8(a)(1) mandating "a short and plain statement of the grounds for the court's jurisdiction," since the complaint contains an ERISA and state law claims, the Court will assume that plaintiff is invoking federal question jurisdiction under 28 U.S.C. § 1331 as to the ERISA claim and supplemental jurisdiction as to the state law claims.

Plaintiff has failed to state a claim under ERISA. Each of the insurance policies at issue contains an anti-assignment clause that renders ineffective the assignment of rights from the patients to plaintiff upon which plaintiff's ERISA claim is based. Plaintiff's conclusory assertions in the complaint that typical communications between it and Aetna regarding the claims constitute a waiver of the anti-assignment clauses are legally insufficient to plausibly plead waiver.

Plaintiff is not entitled to amend the complaint because the problems it has are legal insufficiencies that could not be cured by amendment. The Court will hear from the parties as to whether it should retain supplemental jurisdiction to hear plaintiff's state law claims.

## BACKGROUND

This case involves 49 claims for 17 patients who received orthopedic or spine surgery services from plaintiff.[2] Each of those patients had one of 14 types of health insurance policies issued by Aetna that, as is typical, provided for the payment of full rates (perhaps with a deductible) for services received from health care providers within Aetna's network, but a reduced rate for services provided out-of-network. Benefits for out-of-network services are owed by Aetna to the patient, not to the out-of-network provider. Each of the insurance policies had an anti-assignment clause, preventing the patients from assigning their rights to recover benefits against Aetna to any third party. Although the parties have not placed the specific language from the policies in the record, they seem to agree that the language of the anti-assignment clause, if enforceable, renders any purported assignment ineffective.[3]

---

[2] Plaintiff originally asserted 18 claims submitted on behalf of 50 patients, but Aetna has submitted that one of those patients and that patient's claim are not covered by an Aetna policy. Plaintiff has not disagreed.

[3] Plaintiff asserts that any ambiguities in the anti-assignment clause should be construed against Aetna. But since it has not placed the actual language before the Court, let alone pointed to any ambiguity, the assertion is immaterial.

Plaintiff is an out-of-network provider. It obtained assignments of policy benefits from each patient at the earliest opportunity, depending on the condition of the patient. It then communicated with Aetna to submit and process its claims. In each instance, the claim was either denied, or the amount allowed by Aetna was less than what plaintiff thought Aetna should pay, or there was no response at all. In most instances, plaintiff pursued the claim through the administrative process provided in the policies; it contends that as to any instances where it did not administratively exhaust a claim, it would have been futile to do so.[4]

The complaint sets forth five claims for relief. The first is under ERISA, 29 U.S.C. § 1132(a)(1)(B), for failing to pay according to the terms of the insurance policies, which fall under ERISA. The remainder of the claims are under state law for: (1) breach of an implied-in-fact contract between plaintiff and Aetna; (2) unjust enrichment; (3) promissory estoppel; and (4) a declaratory judgment that plaintiff is not limited to in-network rates of reimbursement.

## DISCUSSION

### I.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.[5] In deciding a motion under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion

---

[4] At this stage, Aetna has not raised a failure to exhaust defense.

[5] Aetna has phrased its motion in terms of lack of standing, but since the issue is statutory standing, not constitutional standing, the argument is better addressed as a failure to state a claim under ERISA. See Cooperman v. Empire HealthChoice, No. 24-cv-866, 2025 WL 950675, at *5 n.7 (S.D.N.Y. March 28, 2025) (citing Do No Harm v. Pfizer Inc., 126 F.4th 109, 117 n.5 (2d Cir. 2025); Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016)).

to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted). In reviewing a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted).

> **II.    Application**

Under this standard, the complaint fails to state an ERISA claim upon which relief can be granted. First, plaintiff appears to recognize that the anti-assignment clause means what it says – a third party like plaintiff cannot assert the rights of a patient to payment or reimbursement from Aetna under the policy. Instead, plaintiff alleges that by participating in the claims administration process for claims submitted by plaintiff (instead of rejecting those claims out of hand), or by partially paying some of plaintiff's claims, Aetna has waived the restriction in the anti-assignment clause. But those actions or inactions do not constitute a waiver under the law.

Substantial and recent authority within this district and the Southern District of New York on indistinguishable facts recognizes this. The same lawyer representing plaintiff here made the same arguments in favor of waiver in Gordon Surgical Group, P.C. v. Empire HealthChoice HMO, Inc., 724 F. Supp. 3d 158 (S.D.N.Y. 2024), but all were rejected. In Gordon, the plaintiff contended that the insurer had provided "written consent" to the assignment of benefits by engaging in correspondence with the plaintiff. Noting that "waiver of a contract right must be proved to be intentional, [and that] the defense of waiver requires a clear

4

manifestation of an intent to relinquish a known right," id. at 172 (quoting Beth Israel Med. Ctr. V. Horizon Blue Ross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 585 (2d Cir. 2006)) (cleaned up), the Gordon court pointed out the absence of any allegation in the complaint that the defendant had delivered a letter stating, in substance, "we hereby waive the anti-assignment clause." The fact that the insurer had engaged in communications and administrative proceedings with the plaintiff concerning its claims simply showed a "willingness to communicate directly with Plaintiffs to some extent," and did not "constitute 'written consent' to the assignment of benefits." Gordon, 724 F. Supp. 3d at 172 (quoting R&R). See also Beth Israel, 448 F.3d at 585 ("mere silence, oversight or thoughtlessness in failing to object . . . will not support a finding of waiver" (quotation and citation omitted)); Neurological Surgery, P.C. v. Aetna Health Inc., 511 F. Supp. 3d 267, 286 (E.D.N.Y. 2021) (although the provider "never once pointed to the anti-assignment language to deny or underpay any claim," its "inaction does not constitute waiver" (cleaned up)).

The complaint at issue here provides even less detail of what actions or inactions by Aetna constitute a waiver than in some of the cases where a waiver has been rejected. Our complaint makes a conclusory allegation that "Aetna's direct dealings with the Practice in connection with the health claims at issue – including written and oral communications, processing of appeals, utilization review, and pre-authorization actions – constitute consent by Aetna to the assignment of benefits to the Practice." Alternatively, it alleges that "Aetna's unequivocal and intentional actions, at the very least, constitute a full and enforceable waiver of the terms of the anti-assignment clause." The only other allegation relating to waiver is that "Aetna, through the years, in dealing with the claims at issue in this lawsuit, took the position

5

that these were in-network claims.  By consistently taking that position, Aetna has, at the very least, waived the applicability of the anti-assignment clauses."

These allegations are deficient in two respects.  First, they are precisely the kind of conclusory statements that Ashcroft and Twombly direct courts to strip away when considering the plausibility of a claim.  More fundamentally, even if plaintiff had provided more detail as to each claim by, for example, describing the back-and-forth with Aetna on each claim or attaching the correspondence, all that plaintiff has described is the normal iterative process between a claimant and an insurance company.  The mere participation in that process – even the partial payment of some claims – is not the intentional relinquishment of a contractual right that could give rise to a waiver.  See Da Silva Plastic & Reconstructive Surgery, P.C. v. Empire Healthchoice HMO, Inc., No. 22-cv-7121, 2025 WL 240917, at *10 (E.D.N.Y. Jan. 17, 2025); Redstone v. Empire Healthchoice HMO, Inc., No. 23-cv-2077, 2024 WL 967416, at *5 (S.D.N.Y. March 5, 2024) (allegations of "regular interaction and communication" insufficient to state a claim based on waiver of anti-assignment provision); Superior Biologics NY, Inc. v. Aetna, Inc., No. 20-cv-5291, 2022 WL 4110784, at *8-10 (S.D.N.Y. Sept. 8, 2022); Neurological Surgery, P.C., supra; Neurological Surgery, P.C. v. Travelers Co., 243 F. Supp. 3d 318, 330-31 (E.D.N.Y. 2017).[6]  Nothing under the law required Aetna to shut down plaintiff's communications upon its initial receipt of plaintiff's claim or risk waiver merely by proceeding to evaluate the claim through the process prescribed under the ERISA plan.

Plaintiff makes a cursory request for leave to amend in the event Aetna's motion is granted.  The Court has considered that request carefully, as it is the exception rather than the

---

[6] Plaintiff's opposition to defendant's motion annexes some transcripts of somewhat older, mostly unreported decisions that are contrary to the weight of recent authority cited above.  I respectfully disagree with those decisions because they are inconsistent with the legal requirements for adequately pleading a waiver.

rule to deny leave to amend, see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991), but there are at least three reasons why amendment would not achieve anything here.

First, plaintiff has given no indication of what amendment it would make. That is sufficient reason to deny leave to amend. See Arnold v. KPMG LLP, 334 F. App'x 349, 352-53 (2d Cir. 2009) (affirming denial of leave to amend because "Plaintiff failed to identify those facts that would save his complaint, should he be granted leave to amend, with sufficient specificity"); Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004) ("[A]n amendment is not warranted absent some indication as to what appellants might add to their complaint in order to make it viable." (cleaned up)); Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." (citation omitted)).

Second, plaintiff argues that "Aetna should not be permitted, as the result of mere technical defects, if any, in the Complaint, to escape its obligations. . . ." The deficiencies in the complaint, however, are not "technical defects." They are entirely dependent on plaintiff's foundational theory that the normal and typical participation by an insurer in the claims resolution process gives rise to a waiver. But out of the 49 claims at issue here, plaintiff does not suggest that Aetna, in even one instance, gave it any assurance that the anti-assignment clause would not be enforced. An amended complaint without that assurance for each of the claims would be just as deficient as the current complaint.

Third, it is not as if plaintiff's lawyer needs to think much about what kind of amendments he might make. He is the preeminent lawyer in this field challenging anti-assignment clauses on behalf of health care providers, and has litigated more than a dozen cases

7

involving the issue. If there was something our plaintiff could add by way of amendment to solve this problem, it would have mentioned it in support of the request for leave to amend. Although this reality is not dispositive, it is one more reason to believe that any amendment would be futile.

The motion to dismiss the ERISA claim is therefore granted, and leave to amend is denied.

### III. State Law Claims

As for the remaining state law claims, "ERISA provides for two types of preemption: complete preemption under Section 502; and express preemption under Section 514." Trundle & Co. Pension Plan v. Emanuel, No. 18-cv-7290, 2019 WL 4735380, at *3 (S.D.N.Y. Sept. 27, 2019) (citations omitted). "Complete preemption under Section 502 is jurisdictional, essentially allowing for removal of state law claims into federal court by converting the plaintiff's state law claim to one to enforce the ERISA plan under federal law." Id. (cleaned up). Express preemption, on the other hand, "is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption). . . . As an ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014) (citations omitted).

"[C]laims are completely preempted by ERISA if they are brought (i) by an individual who at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and (ii) under circumstances in which there is no other independent legal duty that is implicated by a defendant's actions." Id. at 241 (cleaned up). Here, plaintiff is not "the type of party that can bring a claim pursuant to § 502(a)(1)(B)," and so fails to meet the first requirement for the

8

application of complete preemption. McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc., 857 F.3d 141, 146 (2d Cir. 2017) (quotation omitted).

"Absent a valid assignment of a claim, non-enumerated parties lack statutory standing to bring suit under ERISA even if they have a direct stake in the outcome of the litigation." Id. at 148 (cleaned up). As discussed above, the parties do not dispute that the plans at issue contain an anti-assignment clause which, by its terms, renders any purported assignment ineffective. Moreover, this Court has found no waiver of the anti-assignment clause. Accordingly, there was no valid assignment of claims to plaintiff. This lack of a valid assignment means that plaintiff could not have brought its state law claims under ERISA, and thus complete preemption does not apply.

Because plaintiff's claims are not completely preempted, ERISA does not serve as "an alternative basis for subject-matter jurisdiction." Wurtz, 761 F.3d at 239 (citation omitted). Having dismissed the only claim invoking federal law, and finding no other basis for subject-matter jurisdiction, the Court is inclined to deny the exercise of supplemental jurisdiction over plaintiff's state law claims. See 28 U.S.C. § 1367. When a case is dismissed at the Rule 12(b)(6) stage, the "default rule," under the oft-quoted language from Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), is that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." All of those factors point to declining to exercise jurisdiction over plaintiff's state law claims here.

However, because neither side has addressed the issue of whether the Court should retain supplemental jurisdiction over the state law claims in the event of dismissal of the ERISA claim, the Court will allow an opportunity for either party to be heard on that point.

## CONCLUSION

The motion to dismiss the ERISA claim is granted. Either party may submit a letter memorandum within 14 days if they wish to assert that the Court should retain supplemental jurisdiction over the state law claims.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
September 3, 2025